UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN STANGO,

                Plaintiff,                Case No. 2:17-cv-10539
                                        District Judge Robert H. Cleland

v.                                      Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

## RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 14) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 15)

I.    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 15),

and **AFFIRM** the Commissioner's decision.

II.    **REPORT**

        Plaintiff, Alan Stango, brings this action under 42 U.S.C. § 405(g) and 42

U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying his applications for social security disability

insurance (DI) benefits and Supplemental Security Income (SSI) benefits.  This

matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 14), the Commissioner's cross motion for summary judgment (DE 15) and the administrative record (DE 12).

### A.    Background

Plaintiff filed his applications for SSI and DI benefits on June 12, 2014, alleging that he has been disabled since April 8, 2011.  (R. at 174-84.)  Plaintiff's applications were denied, and he sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 82-101, 114-16.)  ALJ Virginia Trzaskoma held a hearing on September 14, 2015, at which Plaintiff was represented by counsel.  (R. at 31-81.)  The ALJ considered all of the evidence and determined that Plaintiff was not disabled within the meaning of the Social Security Act through the date of the decision.  (R. at 17-26.)  On December 27, 2016, the Appeals Council denied Plaintiff's request for rehearing.  (R. at 1-4.)  Thus, ALJ Trzaskoma's decision became the Commissioner's final decision.  Plaintiff timely commenced the instant action on February 20, 2017.  (DE 1.)

### B.    Plaintiff's Medical History

Plaintiff's combined medical records span the period from April 8, 2011 through June 10, 2015, and include complaints primarily of left leg and knee pain following a left tibial plateau fracture and surgical repair by open reduction internal fixation (ORIF) as well as meniscal repair after being hit by a car in April

2011. (R. at 265-441.)  The 176 pages of medical records are comprised of hospital and treatment records and diagnostic testing, and will be discussed as necessary below.

### C.    Hearing Testimony

Plaintiff testified at the September 14, 2015 hearing before ALJ Trzaskoma, as did vocational expert Charles H. Mcbee.  (*See* R. at 36-80.)  This testimony will be discussed as necessary below.

### D.    The Administrative Decision

On October 28, 2015, ALJ Trzaskoma issued an "unfavorable" decision. At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff has not

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

engaged in substantial gainful activity since April 8, 2011, the alleged onset date.

(R. at 19.)  At **Step 2**, the ALJ found that Plaintiff has the following severe

impairments: tibial plateau fracture, status-post open reduction internal fixation

(ORIF) with meniscal repair; and posttraumatic arthritis.  (R. at 19-20.)  At **Step 3**,

the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed

impairments.  Specifically, she found that, **"The claimant's left leg impairment

does not meet or medically equal [L]isting 1.02A or Listing 1.06 because the

claimant is able to ambulate effectively as defined in Listing 1.00B2(b)."**  (R. at

20) (emphasis added).  Prior to **Step 4** of the sequential process, the ALJ

determined that Plaintiff has the residual functional capacity ("RFC")[2] to:

> perform light work … except: [he] can lift/carry 20 pounds
> occasionally and 10 pounds frequently; can push and pull as much as
> he can lift and carry; can sit up to six hours and stand/walk up to four
> hours each, in an eight hour workday; can occasionally climb ramps
> and stairs, but never climb ladders, ropes, and scaffolds; can
> occasionally stoop, crouch, kneel, and crawl; and must avoid work
> environments with excessive vibration, moving machinery and
> unprotected heights.

---

"[D]uring the first four steps, the claimant has the burden of proof; this burden
shifts to the Commissioner only at Step Five."  *Walters v. Comm'r of Soc. Sec.*,
127 F.3d 525, 529 (6th Cir. 1997) (citations omitted).

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

(R. at 20-25.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (R. at 25.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 25-26.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 8, 2011 through the date of the decision.  (R. at 26.)

### E.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

5

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its

6

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

Plaintiff claims that the ALJ: **(1)** erroneously determined that Plaintiff could

perform light work, and **(2)** failed to properly evaluate whether Plaintiff met or

medically equaled Listing 1.06.  (DE 14 at 22-26.)  The Commissioner opposes

Plaintiff's motion, asserting that substantial evidence supports the Commissioner's

decision.  (DE 15 at 8-23.)  I will address each argument in turn.

### 1.    The ALJ's RFC Determination is Supported by Substantial Evidence

Plaintiff argues that the ALJ's RFC for a reduced range of light work is not

supported by substantial evidence.  (DE 14 at 22-23.)  According to Plaintiff,

"more consideration should have been given to the years of treatment Plaintiff

underwent in relation to his left knee, including several findings of abnormal or

antalgic gait, recommendations for and use of assistive devices at least on an as

needed basis, multiple positive test findings, and continued abnormal x-ray

findings, even after his second surgery."  (DE 14 at 22.)  He contends—in a one-

and-a-half page argument without any citation to the record evidence—that

"[n]othing in the record suggests that Plaintiff can walk for four hours and then

stand for four hours, or the converse," and that the RFC is "contrary to and/or

unsupported by any medical opinion with regard to [his] ability to walk and/or stand for four hours each[.]"  (*Id.* at 22-23.)  The Commissioner responds that substantial evidence supports the ALJ's RFC determination for a reduced range of light work.  (DE 15 at 8-17.)  It must be borne in mind that Plaintiff bears the burden of proof at Steps 1-4 including proving his RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (["D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") *(citing Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 148 (6th Cir.1990); *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980)); *Cole v. Sec'y of Health and Human Servs.,* 820 F.2d 768, 771 (6th Cir.1987)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity").  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner.").

Plaintiff's RFC is "the most [he] can still do despite the physical and mental limitations resulting from [his] impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).

The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(e), 416.927(e).  "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citation omitted).  Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).   In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).  Instead, the ALJ "'need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id.* (citations omitted).

The ALJ here thoroughly reviewed and considered Plaintiff's function report, his hearing testimony, his daily activities, the objective medical evidence, his treatment history, and the opinion evidence, and found that, despite Plaintiff's left leg injury, he still was capable of performing a reduced range of light exertional level work. (R. at 20-25.) Plaintiff has reported that he fixes simple meals daily, folds laundry, loads the dishwasher, dusts, uses the weed-eater and mows the lawn with the help of his son, drives, goes shopping once a week, and occasionally goes fishing. (R. at 21, 53-64, 214-21.) ALJ Trzaskoma recognized that Plaintiff sustained a tibial plateau fracture in April 2011, is status-post ORIF with meniscal repair, that he underwent a second surgery on September 12, 2012 to have his hardware removed and to fix a nonunion, and that he has been assessed with posttraumatic arthritis. (R. at 21-24.) She observed that exams during that time have demonstrated some tenderness in his left knee, that he was at times restricted on weightbearing on his left leg, and that he had an occasional antalgic gait. However, he has routinely displayed normal motor strength, sensation, and reflexes in his lower extremities, has sought little in the way of treatment since his revision surgery, and admitted to requiring only over-the-counter medications. (R. at 22-23, 265-69, 275-78, 354-55, 358-59, 363-65.) In January 2013, Plaintiff was described as "doing well," and only complained of occasional twinges of pain when walking or when he walked "excessively." In March 2014, Plaintiff had an

10

antalgic gait, but there were no noted deficits in motor strength, sensation, or reflexes in his lower extremities, and he indicated he could walk for an hour pushing a shopping cart.  Records from June 2015, indicate that he walked with a normal, non-antalgic gait, had normal range of motion of the left knee, with no significant deficits noted in motor strength, sensation, or reflexes, imaging studies were unremarkable, and he was only instructed to avoid "deep squatting."  (R. at 22-23, 358-61, 378-79.)

The ALJ also considered the opinion evidence in making her RFC determination.  She recognized that Plaintiff's physician, Dr. Michael Chrissos, opined in May 2014 that Plaintiff should perform "sit down work" only and requires frequent repositioning due to post-traumatic arthritic symptoms.  (R. at 24, 362.)  However, ALJ Trzaskoma gave this opinion no weight, finding it inconsistent with the objective medical evidence of record and Plaintiff's treatment history over the last three years, "revealing that he has normal motor strength, sensation, and reflexes in his lower extremities and that he has been requiring only over-the-counter medications," as well as his activities of daily living.  (R. at 24.)  She further noted that Dr. Chrissos's opinion was not consistent with the September 2014 opinion of the State agency consultant, Sonia Ramirez-Jacobs, M.D.  (R. at 24, 86-87.)  The ALJ noted that Dr. Ramirez-Jacobs examined the medical record evidence, including Dr. Chrissos's May 2014 treatment note and

opinion, and opined that Plaintiff was limited to a reduced range of light work.
(*Id.*)  The ALJ afforded Dr. Ramirez-Jacobs's opinion much greater weight

because it was significantly more consistent with Plaintiff's treatment history, the

objective medical evidence, and Plaintiff's activities of daily living.  (*Id.*).  Plaintiff

does not challenge the weight the ALJ assigned to the opinion evidence in this

case, and it is well settled that the opinions of State agency medical consultants,

such as Dr. Ramirez-Jacobs, may be entitled to significant weight because they are

"highly qualified physicians and psychologists who are experts in the evaluation of

the medical issues in disability claims under the [Social Security] Act."  SSR 96-

6p, 1996 WL 374180, at *2 (July 2, 1996); *see Jones v. Comm'r of Soc. Sec.*, No.

1:14-CV-996, 2015 WL 5749687, at *6-7 (W.D. Mich. Sept. 30, 2017) (ALJ

properly gave greater weight to State agency medical consultant consistent with the

record evidence).

Contrary to the Plaintiff's unsupported assertion that "[n]othing in the record

suggests that [he] can walk for four hours and then stand for four hours[,]" (DE 14

at 22), that is not what the ALJ found in her RFC determination.  Dr. Ramirez-

Jacobs opined that Plaintiff could "stand and/or walk" "[a]bout 6 hours in an 8-

hour workday." (R. at 86.)  Giving Plaintiff the benefit of the doubt, the ALJ

restricted Plaintiff even further and found that Plaintiff had the ability to stand or

walk up to four hours each in an eight-hour work day, and imposed the additional

limitations that he must also avoid work environments with excessive vibration, moving machinery and unprotected heights. (R. at 20). While Plaintiff believes that "more consideration should have been given to the years of treatment [he] underwent in relation to his left knee," as discussed above, the ALJ thoroughly examined and considered the record evidence in this case, including the treatment records and diagnostic reports, and her RFC determination was within her "zone of choice" and is supported by substantial evidence. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012) (even if the record contains "conflicting evidence that would suggest further limitations, under the substantial evidence standard, administrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.") (citation omitted). Plaintiff's claim of error is denied.

### 2.     The ALJ's Step 3 Finding is Supported by Substantial Evidence

Plaintiff argues that "there is a complete absence of any analysis" in the ALJ's Step 3 finding that Plaintiff does not meet or equal Listing 1.06. (DE 14 at 23-26.) He contends that he in fact meets and/or equals Listing 1.06, and that "no medical opinion is referenced to determine whether the listing is met and/or equaled." (*Id.*) The Commissioner responds that the ALJ's Step 3 finding is supported by substantial evidence, including the opinion of the State agency

13

physician, and that Plaintiff did not meet his burden to establish all of the required elements of Listing 1.06.  (DE 15 at 17-23.)

A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he is disabled at Step 3 of the sequential evaluation process.  *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986).  The claimant has the burden to prove that all the elements are satisfied.  *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984).  Moreover, "[t]he burden of providing a … record … complete and detailed enough to enable the Secretary to make a disability determination rests with the claimant."  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  It is not sufficient to come close to meeting the conditions of a Listing.  *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed when medical evidence "almost establishes a disability" under Listing).

The ALJ here found that "[t]he claimant's left leg impairment does not meet or medically equal [L]isting 1.02A or Listing 1.06 because the claimant is able to ambulate effectively as defined in Listing 1.00B2(b)."  (R. at 20.)  Plaintiff only challenges the ALJ's finding as to Listing 1.06.  Listing 1.06 requires a showing that Plaintiff has a:

> Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones.
> With:

      A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid; and

      B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.06.  Inability to ambulate effectively is

defined as:

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B2b.

> (2) *To ambulate effectively,* individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to *carry out activities of daily living*. They must have the ability to *travel without companion assistance* to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a *walker, two crutches, or two canes*, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the *inability to climb a few steps* at a reasonable pace *with the use of a <u>single</u> hand rail*.

*Id.* (emphases added).

    First, Plaintiff's argument that the ALJ's single sentence Step 3 analysis is

insufficient, citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th

Cir. 2011), fails.  Recent Sixth Circuit opinions have declined "to require remand when the ALJ provides minimal reasoning at step three of the five-step inquiry." *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014) (noting that the regulations "require only that the ALJ 'consider all evidence in [the claimant's] case record,' 20 C.F.R. § 404.1520(a)(3), and, at step three, 'consider the medical severity of [the claimant's] impairment(s),' *Id.* § 404.1520(a)(4)(iii)"). Rather, an ALJ's failure to provide a detailed analysis at Step 3 is not a basis for relief if the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusions at step three." *Id.* at 366.  There is "no need to require the ALJ to spell out every fact a second time." *Id.*  In addition, the Sixth Circuit recognizes that any error with respect to the ALJ's step three analysis is harmless unless the claimant can establish that he satisfied the listing in question. *Id.* (distinguishing *Reynolds*, 424 F. App'x at 416).

Here, the State agency medical consultant, Dr. Ramirez-Jacobs, opined that Plaintiff did not meet or medically equal Listings 1.02 and 1.06.  (R. at 20, 85, 94); *see Fronczak v. Berryhill*, No. 16-11554, 2017 WL 3773236, at *4 (E.D. Mich. Aug. 7, 2017) (the doctor's "signature on the disability determination form and finding that Fronczak can carry out light work 'ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of

16

administrative review,'" citing SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996)), *report and recommendation adopted by*, 2017 WL 3727317 (E.D. Mich. Aug. 30, 2017).   Plaintiff, on the other hand, provides no opinion evidence that his impairments meet or medically equal Listing 1.06.

In addition, the ALJ discussed the record evidence in detail and articulated ample support for her determination that Plaintiff did not satisfy Listings 1.02A and 1.06 because he was able to ambulate effectively.   (R. at 20-25.) The ALJ noted that according to Plaintiff's function report and his hearing testimony, he reports that he can walk one to two blocks, he walks across the street to his in-law's house to have coffee, he uses his weed-eater and mows the lawn with the help of his son, he drives, goes shopping once a week, "reported no problems with self-care" and goes fishing, but not often.   (R. 21, 214-21.)[3]   Tellingly, Plaintiff affirmatively reported in his function report that he <u>does not use crutches, a walker, or a cane</u>, and testified at the hearing when questioned about his use of assistive devices that "[n]othing's been ordered for me.   I just have my crutches at home when I need them."   (R. at 67, 220.)

And, while Plaintiff asserts in his motion that *at times* since the 2011 onset date through the date of the hearing he has "reported the use of crutches" and that

---

[3] Notably, Plaintiff indicated in his function report that he can drive a car and go out alone (R. at 217), which meets the "ability to travel without companion assistance" criterion of ambulating effectively under Listing § 1.00B(2)(b).

he has "spent a great deal of time in 2011 and 2012 on non-weightbearing or light weightbearing restrictions," (*see* DE 14 at 25), the ALJ's thorough review and recitation of the record evidence supports her Step 3 finding that Plaintiff is able to ambulate effectively as defined in the Listings for most of the relevant period.  (R. at 22-25.)  Plaintiff must "show that his inability to ambulate lasted or can be expected to last for at least twelve months." *Forrest*, 591 F. App'x at 366 (citing § 1.00B2a and noting that "the ALJ's factual findings support the conclusion that Forrest could 'ambulate effectively' for most of the relevant period").

Plaintiff was struck by a car on April 8, 2011 and underwent surgical repair of his left tibial plateau fracture and meniscus repair.  (R. at 21-22, 288.)  By August 2011, Plaintiff's physical exam was unremarkable and he was instructed to weightbear as tolerated and continue physical therapy.  (R. at 22, 272.) In November 2011, Plaintiff was reported to be weightbearing as tolerated, and showed no deficits in motor strength, sensation or reflexes, and on January 9, 2012 he was "doing pretty well," with good range of motion, normal motor strength and sensation, and he was ambulating and climbing stairs.  (R. at 22, 265, 268.)  In February and May 2012, Plaintiff reported he was on limited weightbearing with crutches, and he underwent a surgery to have his hardware removed in September 2012.  (R. at 22, 341-43, 363-65.)  By December 2012, however, Plaintiff complained of minimal pain and started using one crutch to ambulate (R. at 22,

354-55), and the following month, he was described as "doing well," was only taking over-the-counter medication for pain, reported that he could ambulate up and down stairs, walked with the assistance of a single crutch, and complained of only occasional twinges of pain when walking or when he has walked "excessively." (R. at 22-23, 358-59.) Plaintiff was not seen again by Dr. Chrissos until May 2014, at which time he walked with a limp but reported that he is able to walk for an hour pushing a shopping cart. (R. at 23, 360.) And, as of June 8, 2015, Plaintiff walked with a normal, non-antalgic gait, he had normal range of motion of the left knee with no significant deficits noted in motor strength, sensation or reflexes. (R. at 23, 377-78.)

Thus, Plaintiff has failed to prove that he is unable to "ambulate effectively" as provided by the Regulations. While Plaintiff has identified some times since his alleged onset date when he was reported to be non-weightbearing or when he used two crutches, Plaintiff has not proven that "his inability to ambulate lasted or can be expected to last for at least twelve months." *See Forrest*, 591 F. App'x at 366 (citing § 1.00B2a); *see also Franklin v. Astrue*, No. 2:11-CV-150, 2012 WL 899322, at *6 (E.D. Tenn. Jan. 25, 2012) (plaintiff failed to meet the Listing because "[t]here is no evidence that he was on crutches for 12 months at any time in the record"), *report and recommendation adopted by*, 2012 WL 899067 (E.D. Tenn. Mar. 13, 2012). Plaintiff also does not present a contradictory medical

opinion that he needs to use two crutches or a walker, as opposed to a single crutch or a cane, and fails to meet his burden to prove he cannot "effectively ambulate." Likewise, Plaintiff has not established that his impairments medically equal Listing 1.06. ALJ Trzaskoma relied on the opinion of the State agency medical consultant, Dr. Ramirez-Jacobs, as to whether Plaintiff's impairments medical equaled the requirements of that listing (R. at 85, 94), and Plaintiff did not present an alternative medical opinion, or otherwise demonstrate, that his impairments medically equal Listing 1.06.

Accordingly, substantial evidence supports ALJ Trzaskoma's conclusion that Plaintiff's impairments do not meet or medically equal the requirements of Listing 1.06, and Plaintiff's claim of error is unfounded and unsupported.

### G.    Conclusion

In sum, the ALJ's Step 3 finding and RFC determination are supported by substantial evidence. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 15), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:        February 15, 2018        s/Anthony P. Patti
                                        Anthony P. Patti
                                        UNITED STATES MAGISTRATE JUDGE

21

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing document was sent to parties of record on February 15, 2018, electronically and/or by U.S. Mail.

s/Michael Williams            
Case Manager for the
Honorable Anthony P. Patti
